## WILLIAMS v INDUSTRIAL COMMISSION

Ohio Appeals, 2nd Dist, Franklin Co

No 2880. Decided July 27, 1938

Cowan, Adams & Adams, Columbus, for plaintiff-appellee.

Ralph J. Bartlett, Prosecuting Attorney, Columbus, D. D. Sharp and Edmund B. Paxton, Asst. Prosecuting Attorneys, Columbus, for defendant-appellant.

## OPINION

By HORNBECK, J.

This is an appeal on questions of law from a judgment for plaintiff against the defendant on an appeal from the action of the defendant denying plaintiff's claim to a right to be awarded compensation under the Workmen's Compensation Law.

All formal requisites were averred in the petition and the plaintiff predicated her right to a verdict and judgment upon the further allegation that R. L. Williams, plaintiff's father, was, on June 2, 1928, and prior thereto, in the employ of the Columbus Cookie & Cake Company as a truck driver; that on or about said date, while cranking the truck for his employer, Williams sustained a hernia, for which he was operated on or about May 13, 1936, as a result of this operation he died on May 20, 1936.

The errors assigned all relate to the claim of the plaintiff that her father died as a result of his operation for hernia.

The assigned errors, as argued in the brief of defendant, are:

1. The verdict is not supported by evidence and is contrary to law.

2. The court erred in overruling the motion of the defendant at the close of the evidence to direct a verdict for the defendant.

3. Errors of the court in the charge to the jury.

4. Other errors occurring at the trial and excepted to by the defendant.

The facts all developed by the testimony in the record on behalf of the plaintiff—the defendant offered no testimony—are in substance that in June, 1928, Williams suffered an injury while in the employ of the Columbus Cookie & Cake Co., which resulted in a hernia. The defendant commission recognized the validity of a claim of Williams and authorized an operation for the hernia. Williams, however, did not avail himself of the order and thereafter remained in his employment. The effects of the hernia continued and he suffered from it intermittently until he went to the hospital for the surgical operation, from the effects of which he died.

In May, 1936, Williams suffered pain in his abdomen and consulted his family doctor, who referred him to a surgeon. The surgeon testifies that the family doctor called him by 'phone and said to him that Williams had an umbilical hernia and that he, the surgeon, was sending Williams into the hospital for an operation. Thereafter, the surgeon made an examination as to which he says in the record that he found that "there was a mass around the umbilicus which was probably the size of a

walnut with the shuck or something like that, probably not quite that large, but about"; that Williams "complained of pain rather high in the abdomen upon pressure. This was sore and he was generally sore all over the abdomen, so we could not be absolutely—we did not make a definite diagnosis and it seemed as if the definite thing to do, since he had this mass, was to go in and find out if there was any loop of gut in the sac. That's a very common finding. My first impression was that he had this hernia there,—that he had it for a long time and that a loop of gut, when the small gut, if it got that size, it would cut off the circulation, and I figured that was probably what was causing his trouble."

The surgeon operated for hernia, making an incision some four or five inches long, opened up the sac, found it filled with omentum and that there was not a loop of small gut in the sac. The hernia was repaired, that is, "tied off and cut away the portion above that where we tied it up, and then overlapped the fascia, the fascia is the layer through which the hernia occurred, we freed that and overlapped the fascia so that when we got through we felt certain there would not be any more trouble here." Did the complete operation for hernia.

The surgeon after completing the operation for hernia was of the opinion that the condition there found did not account for the pain which Williams suffered. He thereupon, and immediately after the hernia operation, and the sewing up of the wound, made another exploratory incision in the abdomen, whereupon it was found that the appendix had perforated and that there was pus generally in the abdomen. The appendix was removed and a drain put in at the stump of the appendix. It was closed in the usual manner and some five days after the operations Williams died. The surgeon who signed the certificate of death assigned as the cause thereof, peritonitis, with contributing causes, appendicitis and strangulated hernia.

Respecting the causative effect of the operation for the hernia on the death of Williams, the surgeon said:

"If he (Williams) had not had his hernia, and I had operated for appendicitis without having repaired the hernia first, he would have had a better chance to get well";

that by repairing the hernia first it consumed more time and increased the shock on the patient; that the length of the time consumed in the operation had an important bearing upon the recovery from the peritonitis.

This question was put and answer made:

"Q. Have you an opinion whether or not the operation for the hernia probably hastened or probably produced death in this man, that is, together with any other cause of other things he might have had, such as perforated appendix?

A. Well, I would say that it probably was a contributing factor, but not the primary cause of death."

It is urged by counsel for defendant in an extended brief that the averments of the petition did not permit the evidence adduced; that the petition definitely alleges that the operation for the hernia caused Williams' death but that the case made tended only to show that the operation was a contributing factor or accelerated the death; that under the evidence the jury could not properly have found that the operation for hernia accelerated the death; that the sole and only cause of the death was peritonitis and the consequent operation therefor; that the trial judge erred in the general charge, wherein it was said:

"The issue in this case is, as I say, boiled down or shortened. That issue is, what was the cause, or if there was more than one cause, what were the causes of the death of R. L. Williams? Did the hernia and the operation for the hernia cause or contribute to cause or hasten the death of the decedent, that is to say, did the hernia and the operation for the hernia in combination with the appendicitis and its results, did those two things together cause the death, or did the hernia or the operation for the hernia alone cause the death? If these two things caused the death, or if the hernia and the operation for the hernia caused or contributed to cause the death, then the plaintiff has a right to recover. If, on the other hand, the decedent would have died from the appendicitis and the pus in the abdomen which came from the appendicitis and the operation for the appendicitis, regardless of the hernia and regardless of the operation for the said hernia, then in that event the plaintiff could not recover."

We are required to resolve all of these assigned errors against the defendant. We shall not discuss them at length.

The charge very properly announced the law of the case. It is too favorable to the

defendant in the last quoted part thereof.

The averment of the petition was broad enough to permit the admission of the testimony as it developed. If ██ under the law the operation for hernia may be found to be a contributing factor and a proximate cause of the death of Williams, then the death may be said to be a result of that operation, though not the sole result. If there had been a variance between the allegations and the proof objection to the admission of the evidence should have been made during the progress of the trial. It was too late to urge the objection by means of a motion for directed verdict.

The claim that the evidence of the plaintiff does not tend to prove that Williams' death was accelerated and proximately—caused by the hernia operation must fail because of the express statement of the surgeon to the contrary.

Finally, when it appears that the death of Williams was accelerated by the operation for hernia, and a proximate result thereof, the plaintiff has met the obligation of proof enjoined upon her to entitle her to participate in the Workmen's Compensation fund.

We are cited to **Ackerman v Industrial Commission, 131 Oh St 371.** In this case Colby, the decedent, received an injury to his heel in June, 1929 and on November 29, 1930, died of cirrhosis of the liver. It was observed that he died as a result of the injury. The court held that the evidence did not disclose any relationship between the injury and the cause of death. The two propositions of the syllabus relate in no particular to the state of the pleadings which Judge Stephenson discusses in the opinion. Judge Stephenson criticizes the unequivocal averment that the injury caused Colby's death, whereas the testimony was that the injury accelerated an existing condition. However, even in that situation the court did not say that it was fatally defective. Here the charge is that the operation for the hernia suffered in the course of Williams' employment caused his death. All the testimony is directed to the fact that it was a contributing cause of his death. In the Ackerman case Judge Stephenson says:

"All the medical testimony was to the effect that an injury to the oscalcis could not cause cirrhosis of the liver. The testimony was to the further effect that there was absolutely no connection be-tween the injury and the liver condition."

Having so found, the discussion respecting the pleadings was purely obiter.

Much of the brief of defendant is devoted to the proposition that the operation for hernia was the result of a mistaken diagnosis. In view of developments this obviously is true. However, the mistake which was made by the surgeon was certainly one that could not have been anticipated, in view of his knowledge of the patient, the history of his case and the symptoms and conditions which he could determine from external observations and tests. The family doctor in reporting to the surgeon said to him that he was sending over a man who had a hernia for an operation. This in itself was enough to lead the surgeon into the opinion that the necessity of the operation was the hernia. The location of the pain as the surgeon fixed it was high in the abdomen. The hernia was umbilical. The surgeon concluded that all of the symptoms appearing could be related to a recognized condition which might be found in hernia. However, when the incision was made and the hernia was visible and could be carefully observed, the condition which the surgeon expected to find did not appear. Then and not until then did the surgeon determine that other and further surgical intervention was required.

If it could be assumed that the surgeon knew the true condition and that the trouble originated in a burst appendix, it would not be asserted that he likewise would have performed the hernia operation. The hernia operation in and of itself is a major operation, always fraught with possibility of dangerous after effects. The doctor's deduction that the hernia operation was a material proximate causative factor in the death of Williams was sound enough that the jury had the right to accept it especially as it was not denied. The surgeon, being competent and chosen with due care, his diagnosis, though negligent or occasioned by mistake, could not be interposed to prevent plaintiff's recovery. **Tanner v Espey, 128 Oh St 82; 14 Abs 672; Seymour v Carroll, 43 Oh Ap 60.**

The judgment will be affirmed.

BARNES, PJ, concurs.
GEIGER, J dissents.